THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SHAGANG SHIPPING COMPANY LIMITED (IN LIQUIDATION),<br><br>     Plaintiff,<br><br> v.<br><br>HNA GROUP CO., LTD., HNA HOLDING GROUP CO. LIMITED f/k/a HNA INTERNATIONAL INVESTMENT HOLDINGS LIMITED, HNA PLATEAU GOLF LLC, HNA WASHINGTON NATIONAL GOLF LLC, HNA NEWCASTLE GOLF LLC, HNA INDIAN SUMMER GOLF LLC, HNA TROPHY LAKE GOLF, LLC, HNA REDMOND RIDGE LLC HNA HARBOUR POINTE LLC and ABC GOLF, LLC,<br><br>     Defendants. | IN ADMIRALTY<br><br>No. 2:17-cv-00464-RAJ<br><br>**ORDER** |

This matter comes before the Court on Defendants' Motion To Vacate Process of Maritime Attachment and Garnishment and Dismiss Complaint. Dkt. # 32. The parties

ORDER - 1

presented sufficient arguments by way of thorough briefing[1] and the balance of the record for the Court to render a decision based on Supplemental Admiralty Rule E(4)(f). The parties were permitted to file extensive briefing and evidence on which the Court placed no limitation, and therefore the Court finds a hearing unnecessary on this matter in light of the briefing and balance of the record.

## I.  BACKGROUND

Plaintiff entered into a Charter Agreement with Grand China, to which HNA Group Co. Ltd. ("Group") signed as a guarantor. Dkt. # 1 (Complaint) at ¶ 16. Grand China breached the Agreement and Group refused to fulfill its obligations as the guarantor. *Id.* at ¶¶ 18, 19. The parties litigated in London in the English Court, which entered judgment against Group for the sum of $68,597,049.59, plus interests and costs ("English Judgement"). *Id.* at ¶ 21.

To collect on the English Judgment, Plaintiff successfully obtained a writ of attachment pursuant to the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. Dkt. ## 2, 6. The Court issued process of attachment and writ of garnishment against eight golf courses located in Washington ("US golf courses"). Dkt. # 6.

In seeking attachment of the US golf courses, Plaintiff needed to prove through a verified complaint that it established a reasonable probability that it would prevail on its alter ego claim of liability against Defendants. *Id.* Eight limited liability companies ("LLC Defendants") own the US golf courses. Dkt. # 1 (Complaint) at ¶¶ 45, 46. These LLC Defendants are owned by HNA Holding Group Co. Limited ("Holding"). *Id.* at ¶ 45. In turn, Holding is owned in part by Group and in part by public

---

[1] The Court strongly disfavors footnoted legal citations. Footnoted citations serve as an end-run around page limits and formatting requirements dictated by the Local Rules. *See* Local Rules W.D. Wash. LCR 7(e). Moreover, several courts have observed that "citations are highly relevant in a legal brief" and including them in footnotes "makes brief-reading difficult." *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *1 (D. Ariz. Jan. 24, 2014). The Court strongly discourages the parties from footnoting their legal citations in any future submissions. *See Kano v. Nat'l Consumer Co-op Bank*, 22 F.3d 899-900 (9th Cir. 1994).

ORDER - 2

shareholders. Specifically, Group, through a series of subsidiaries, holds approximately 67 percent of Holding's traded shares while about 900 public shareholders own the remaining 33 percent of Holding's traded shares. Dkt. # 34 at 809.

Plaintiff alleges that Group, Holding, and the LLC Defendants abused the corporate form through overlapping officers and suspect infusions of capital to avoid creditors. Defendants deny this, offering a panoply of public records into evidence. Defendants are now before the Court seeking vacatur of the attachment.

## II. LEGAL STANDARD

Rule B maritime attachments serve the dual purpose of obtaining jurisdiction over an absent defendant and securing collateral for a potential judgment in plaintiff's favor. *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434, 437 (2d Cir. 2006), *overruled on other grounds by Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd.*, 585 F.3d 58, 61 (2d Cir. 2009) (mini en banc). The elements for a Rule B writ of maritime attachment are: "(1) plaintiff has a valid prima facie admiralty claim against the defendant; (2) defendant cannot be found within the district; (3) property of the defendant can be found within the district; and (4) there is no statutory or maritime law bar to the attachment." *Equatorial Marine Fuel Mgmt. Servs. Pte Ltd. v. MISC Berhad*, 591 F.3d 1208, 1210 (9th Cir. 2010) (citing *Aqua Stoli Shipping*, 460 F.3d at 445); Fed. R. Civ. P., Supp. R. B

Rule E(4)(f) allows any person whose property has been attached pursuant to Rule B an opportunity to appear before the Court to contest the attachment. To sustain an attachment, the burden is on Plaintiff to show that it has fulfilled the "filing and service requirements of Rules B and E." *Aqua Stoli Shipping Ltd.*, 460 F.3d at 445 (footnote omitted); *see also Equatorial Marine Fuel Mgmt. Servs.*, 591 F.3d at 1210 ("At a Rule E hearing, defendant may argue that the attachment should be vacated because plaintiff failed to meet one of the four conditions for attachment.").

If a plaintiff fails to demonstrate that it has met the requirements of Rules B and E, the Court must vacate the attachment. *Id*. at 445. Maritime plaintiffs, however, are not required to prove their case at this stage. *See Ronda Ship Mgmt. Inc. v. Doha Asian Games Organising Comm*., 511 F. Supp. 2d 399, 404 (S.D.N.Y. 2007) ("The prima facie standard in the maritime attachment context is a pleading requirement, not an evidentiary standard, and differs from the use of that phrase in other contexts."); *Wajilam Exps. (Singapore) Pte, Ltd. v. ATL Shipping Ltd*., 475 F. Supp. 2d 275, 279 (S.D.N.Y. 2006) (holding that where attachment is based on a fraud theory of veil piercing, plaintiff should not be required to allege fraud with particularity before discovery) (citing *Japan Line, Ltd. v. Willco Oil Ltd*., 424 F. Supp. 1092, 1094 (D. Conn. 1976)); *Sea-Terminals, Inc. v. Indep. Container Line, Ltd*., No. 89-412-JRR, 1989 WL 222634, at *2 (D. Del. Aug. 16, 1989) (holding that whether the defendant "is a totally separate and unrelated company" from the company directly liable to plaintiff should not be decided "until the facts are fully fleshed out after discovery").

If the plaintiff carries its burden of showing that an attachment satisfies the requirements, the Court may still vacate the attachment if the defendant can show that "1) the defendant is present in a convenient adjacent jurisdiction; 2) the defendant is present in the district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for a judgment." *See Proshipline Inc. v. Aspen Infrastructures Ltd.*, 533 F. Supp. 2d 422, 426 (S.D.N.Y. 2008) (citing *Aqua Stoli Shipping Ltd*., 460 F.3d at 436).

**III.    DISCUSSION**

Defendants argue that Plaintiff failed to adequately plead a prima facie case and is barred from attaching real property in this maritime action. Dkt. # 32. Defendants further argue that even if Plaintiff met its burden under Rule E(4)(f) to maintain attachment, the Court should nonetheless vacate the attachment for equitable reasons. *Id.*

A. <u>Plaintiff's Prima Facie Case</u>

Plaintiff's burden of proof at this stage is higher than that required for a Motion to Dismiss under Rule 12(b)(6) but does not require Plaintiff to prove its case. *Wajilam Exports (Singapore) Pte.*, 475 F. Supp. 2d at 279 ("Although review of extraneous evidence is appropriate, plaintiffs in a Rule E(4)(f) proceeding should not be required to prove their case."); *see also G.O. Am. Shipping Co., Inc. v. China COSCO Shipping Corp. Ltd.*, No. C17-912 MJP, 2017 WL 6026959, at *6 (W.D. Wash. Dec. 5, 2017) ("Plaintiff's burden of proof in this regard is a showing, on a 'probable cause' basis, supporting its admiralty claim; specifically, that it has a right to attach the vessels in question on a theory of alter ego liability."). "[A]t bottom, the question . . . is whether [Defendants] could, without moving for a more definite statement, frame a responsive pleading." *Flame S.A. v. Indus. Carriers, Inc.*, 24 F. Supp. 3d 493, 506 (E.D. Va.), *aff'd sub nom. Flame S.A. v. Freight Bulk Pte. Ltd.*, 762 F.3d 352 (4th Cir. 2014) (quoting *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 541 (4th Cir. 2013)) (internal quotations omitted).

Plaintiff's prima facie case is premised on the theory that the LLC Defendants are ultimately alter egos of Group. Dkt. # 1 (Complaint) at ¶ 30. To carry its burden on the alter ego theory, Plaintiff must show that Group used its alter ego "to perpetrate a fraud or where it so dominates and disregards its alter ego's corporate form that the alter ego was actually carrying on the controlling corporation's business instead of its own." *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1294 (9th Cir. 1997). In determining domination or control, courts may consider several factors, including:

> 1. Disregard of corporate formalities; 2. Inadequate capitalization; 3. Intermingling of funds; 4. Overlap in ownership, officers, directors, and personnel; 5. Common office space, address and phone numbers; 6. Degree of discretion exercised by the allegedly dominant and/or

dominated corporation; 7. The existence of "arms' length" dealing between the entities; 8. The treatment of the corporations as independent profit centers; 9. Payment or guarantee of the dominated corporation's debts by the dominating entity; 10. Intermingling of property between the entities.

*G.O. Am. Shipping Co.*, 2017 WL 6026959, at *2 (citing *Arctic Ocean Int'l, Ltd. v. High Seas Shipping, Ltd.*, 622 F.Supp.2d 46, 54 (S.D.N.Y. 2009)).

Plaintiff did not meet its burden to establish a prima facie case based upon an alter ego theory. *See Ullises Shipping Corp. v. FAL Shipping Co.*, 415 F. Supp. 2d 318, 323 (S.D.N.Y. 2006), *overruled on other grounds by Aqua Stoli*, 460 F.3d at 445 ("At a post-attachment hearing, a plaintiff asserting corporate alter egos need not definitively establish domination and control, but must present enough evidence to convince the court that there are reasonable grounds for piercing the corporate veil."). In its Complaint, Plaintiff argues that Holding is an alter ego of Group, and that the LLC Defendants are alter egos of Holding. To further its argument that Holding is an alter ego of Group, Plaintiff cites to overlapping officers and suspect infusions of capital to Holding. *See* Dkt. # 1 (Complaint) at ¶¶ 30-63. In its brief in opposition to vacatur, Plaintiff relies on its Complaint and a prior case, *White Rosebay Shipping S.A. v. HNA Group Co.*, No. 2:12-cv-00096, 2013 WL 441014, at *6-8 (S.D. Tex. Feb. 5, 2013), to support its alter ego theory. However, in *White Rosebay*, the parties failed to request a Rule E(4)(f) hearing and therefore the motion to vacate was premised solely on the plaintiff's complaint. *Id.* at *4. This is distinguishable from the instant matter in which the parties had the opportunity to submit supporting evidence regarding Plaintiff's alter ego theory. Unlike *White Rosebay*, the Court is not confined to Plaintiff's Complaint.

Plaintiff contests various board members' overlapping positions with Group and Holding. In its Complaint, Plaintiff argues that Mr. Zhao Quan was appointed as

Chairman of Holding in July 2015. Dkt. # 1 (Complaint) at ¶ 33. Plaintiff argues that Mr. Zhao is also Chairman of one of Group's subsidiaries and CFO of Group. *Id.* at ¶ 35. Plaintiff further alleges that Mr. Wang Shuang serves as Chairman of Holding, Chief Investment Officer of Group, and Director, COO, and CFO of HNA Group (International) Co. Ltd. ("HNA (International)"), a subsidiary of Group. *Id.* at ¶¶ 37-39. In its opposition brief, Plaintiff cites additional directors—Mr. Wang Hao and Mr. Li Tongshuang—who held overlapping roles in Group or its subsidiaries and Holding. Dkt. # 39 at 9.

Mere overlap of a few directors or officers, without more, is insufficient to prove a theory of alter ego. *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (finding that "it is entirely appropriate for directors of a parent corporation to serve as directors of its subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its subsidiary's acts.") (citations omitted). Though Plaintiff can show that some directors held positions within Group and Holding simultaneously, Plaintiff did not show that these directors or officers exerted control such that Holding was not an independent subsidiary. Nor did Plaintiff show that these directors or officers engaged in fraudulent behavior or breached their fiduciary duties to act in the best interest of Holding. Moreover, even if two or three of Holding's directors held significant positions within Group or its subsidiaries, this does not create an inference that the remaining five or six directors, including three necessarily "independent" directors, were acting outside of Holding's best interests. The record before the Court does not support Plaintiff's position that Group totally dominates Holding through overlapping directors or officers.

Plaintiff argues that Holding obtained its capital to purchase the US golf courses from Group. Dkt. # 39 at 10. However, the record suggests that Holding obtained its capital as a result of various measures approved by the Board and independent shareholders. In 2014, Holding's Board made a decision to acquire a majority

ORDER - 7

ownership interest in Dongguan Hillview, a golf hotel property in Mainland China—a notable break from its normal investments in intelligent information. Dkt. # 34 at 23. Also in 2014, Holding announced a subscription agreement to issue shares to one of its parent companies, HNA (International), a subsidiary of Group. *Id.* at 968. Dongguan Hillview quickly turned a profit for Holding, accounting for nearly half of its revenue in 2015. *Id.* at 387. And, in October 2015, Holding issued additional shares to raise revenue; the share issuance was approved by its independent shareholders. *Id.* at 1275. In June 2016, Holding announced its proposal to acquire the US golf courses and used proceeds from a convertible bond as part of the capital. *See id.* at Ex. R (listing the potential acquisition of certain golf properties in the US as a use of the proceeds of the convertible bond), Ex. S (major transaction acquisition of golf courses in the US). Holding proceeded with each action subject to Board and shareholder approval, and interested or non-independent parties abstained from voting. Against this backdrop of evidence, Plaintiff offers only speculation and overreliance on the allegations of its Complaint to support its claim that Group and Holding abused the corporate form. *See, e.g.*, Dkt. # 39 at 11 ("Based on Group's pattern of behavior, the US $354 million received by Holding as a result of the rights shares quite likely came from Group itself."). This is insufficient to carry its burden at this stage.

Plaintiff did not establish a prima facie case for its admiralty claims based on its alter ego theory.[2] Plaintiff relied on its Complaint and *White Rosebay*, but these are insufficient in light of the evidence submitted by Defendants. Because Plaintiff failed to establish a prima facie case, the Court **GRANTS** Defendants' motion to vacate the order of attachment.

---

[2] The Court notes that Group posted a security deposit equaling $73,301,767.28 into the English Court's fund office. Dkt. # 47 at 2. The parties continue to dispute the amount of interest that should be applied above this security deposit. *Id.* at 2-3. However, the deposit appears to be sufficient security for the English Judgment.

ORDER - 8

B. Motion to Dismiss

Defendants appear to seek dismissal under 12(b)(6) but failed to advance any specific arguments. "Even when jurisdiction is based solely on maritime attachment and that attachment is vacated under Supplemental Rule E, dismissal does not automatically follow." *Flame S.A.*, 24 F. Supp. 3d at 501 (citing *Vitol, S.A.*, 708 F.3d at 540). "Dismissal of the complaint is not a Rule E remedy." *Id.* Accordingly, the Court **DENIES** Defendants' motion to the extent they wish to dismiss Plaintiff's Complaint under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion. Dkt. # 32. The attachment is vacated. Dkt. # 6.

Dated this 28th day of March, 2018.

*[signature: Richard A. Jones]*

The Honorable Richard A. Jones
United States District Judge